UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

NELLIE B. JENKINS                                         CIVIL ACTION NO. 14-3276

VERSUS                                                        JUDGE S. MAURICE HICKS, JR.

STATE OF LOUISIANA                                    MAGISTRATE JUDGE HORNSBY
WORKFORCE COMMISSION

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion to Dismiss (Record Document 68) filed by Defendant, State of Louisiana Workforce Commission ("LWC"). A Memorandum in Opposition was filed by Plaintiff, Nellie B. Jenkins ("Jenkins"). See Record Document 70. A Reply was filed by LWC. See Record Document 75. For the reasons which follow, the Motion to Dismiss is **GRANTED** and all of Jenkins' claims are **DISMISSED**.

**BACKGROUND**

I.  Factual Background

Jenkins began working for the State of Louisiana on June 8, 1984, as an Eligibility Determination Examiner. She currently works for Louisiana Rehabilitation Services (LRS) as a Rehabilitation District Supervisor. See Record Document 67 at ¶ 4. On June 6, 2014, Jenkins filed an EEOC Charge of Discrimination alleging sexual and racial discrimination and retaliation by LRC. See Record Document 1, Ex.1. Jenkins asserted that she was "passed over" for the position of Regional Manager based on her race, sex, and retaliation. Id. at ¶ 5. On August 13, 2014, the EEOC issued Jenkins a right to sue letter. See id. at ¶ 17. During Jenkins' employment, Gerald Dyess ("Dyess"), a white male who was the Rehabilitation Regional Manager and Jenkins' supervisor, promoted John Vaughn ("Vaughn"), also a white male, from Counselor to Rehabilitation Employment Development

Specialist to Supervisor, each time allegedly over more experienced staff personnel. See id. at ¶ 6.

Jenkins alleges that Dyess undermined her supervisory authority over two subordinate white female employees by telling them that they were to report directly to him instead of Jenkins. See id. at ¶ 7. Following this event, Jenkins filed a grievance about this practice and Dyess allegedly retaliated by telling other employees that he intended to ensure Jenkins would not be promoted to Regional Manager. See id. Dyess left LRS on December 20, 2013 and Vaughn was placed in charge of the daily operations of the Shreveport Rehabilitation Services office on December 23, 2013. See id. at ¶ 8. Jenkins alleges that there was a long and consistent history within the LRS Shreveport office of placing the senior supervisor in charge when the Regional Manager is not in the office. See id. Jenkins has 30 years of experience with the State of Louisiana and 23 years of experience with LRS, 9 of which are supervisory experience. See id. at ¶ 9. Vaughn allegedly had approximately 20 years of experience with the State of Louisiana, 12 years of experience with LRS and 4 years of supervisory experience. See id.

Jenkins argues that by passing her over for the supervisor in charge position, the Director and Assistant Director of LRS communicated to Jenkins that it would be a waste of time for her to apply for the position of Rehabilitation Regional Manager. See id. at ¶ 11. Specifically, Jenkins argues that it would have been a futile gesture for her to apply for the promotion. See id. In January 2014, the LRS Director and Assistant Director requested a meeting with Jenkins to address what they considered was an inappropriate case note. See id. at ¶ 12. In March 2014, LRS formally appointed Vaughan as the Rehabilitation Regional Manager for the LRS Shreveport Region. See id. at ¶ 13.

II.     Procedural Background

Jenkins filed her Original Complaint (Record Document 1) on November 13, 2014. This Court held a status conference on February 25, 2016 and advised Jenkins' counsel that he would have fourteen (14) days to file a Motion for Leave of Court to Amend Complaint. See Record Document 59. A Motion for Leave to File First Amended Complaint (Record Document 57) was filed on February 25, 2016, but was denied by this Court on May 17, 2016. See Record Document 64. Jenkins then filed a Motion for Leave to File Second Amended Complaint (Record Document 65), which was granted on May 20, 2016. See Record Document 66. Defendants have filed a Motion to Dismiss Amended Complaint (Record Document 68).

**LAW AND ANALYSIS**

I.      Rule 12(b)(6) Standard

The Motion to Dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556, 127 S.Ct. 1955, 1964-1965 (2007).

The task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Lone Star Fund V

(U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir.2010), citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949.

II.   Amended Complaint

Jenkins makes the procedural argument that it is unclear which "amended complaint" is being addressed in the Motion to Dismiss (Record Document 68), arguing that "LWC is attacking Ms. Jenkins' Amended Complaint (Record Document 57-1), a document that never made its way into the record." See Record Document 70. The record appears clear to this Court that the Motion to Dismiss Amended Complaint (Record Document 68) is in reference to what has been entitled "Second Amended Complaint" (Record Document 67). Jenkins filed a Motion for Leave to File Amended Complaint (Record Document 57) that chronologically was the "First Amended Complaint." The Motion for Leave was denied by this Court and therefore the "First Amended Complaint" was never entered into the record. Accordingly, LWC's reference to the "Amended Complaint" in its Motion to Dismiss could only be a reference to the "Second Amended Complaint."

III.   Failure to State a Claim Upon Which Relief May be Granted Under Title VII

LWC argues that Jenkins has failed to state a claim upon which relief may be granted under Title VII, specifically that Jenkins has failed to state a claim for failure to promote and retaliation.

A.   Failure to State a Claim for Failure to Promote

In order to show a failure to promote, the plaintiff must show that "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." Burrell v. Dr. Pepper/ Seven Up Bottling Group Inc. 482 F. 3d 408,

412 (5th Cir. 2007).

In order to overcome the motion to dismiss, Jenkins' complaint must contain sufficient factual matter that, if it were accepted as true, would state a claim to relief that is plausible on its face. See Iqbal, 556 U.S. at 678. Jenkins' "Second Amended Complaint" states that she is a member of two protected classes under Title VII, being a woman and African-American. See Record Document 67. This is sufficient to satisfy the pleading requirement for the first element of belonging to a protected class.

With regards to the requirement that she applied for and was qualified for a position for which applicants were being sought, it is undisputed that Jenkins did not apply for the promotion with LRS, but rather she argues that there was a "well-known history of hiring the supervisor in charge as the Regional Manager." Record Document 67, ¶ 8. Jenkins argues that it would have been a "futile gesture" for her to apply for the promotion, as "she was deterred from doing so by the well-known history and policy of hiring the supervisor in charge to become the Regional Manager." Id.

A plaintiff may still bring a claim for failure to promote even if they did not apply for the promotion, so long as they can prove that it would have been a futile gesture. The "futile gesture" exception will only apply where "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." Irons v. Aircraft Service Intern., Inc., 392 Fed. Appx. 305 (5th Cir. 2010), citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406 (5th Cir.1999). In this instance, Jenkins would have to show that she was deterred by a known and consistently enforced policy of discrimination on the part of the LRS Shreveport office.

Jenkins' argument is that the LRS Shreveport office had a "well-known history" of

hiring the supervisor in charge to be the Regional Manager, which would have been her when Dyess left the LRS Shreveport office. Instead, she alleges she was passed over when Vaughn, a white male, was placed in charge of the daily operations of the LRS Shreveport office and ultimately promoted to the Rehabilitation Regional Manager. Jenkins points to the fact that she had 30 years of experience with the State of Louisiana, 23 years of experience with LRS and 9 years of supervisory experience. Vaughn on the other hand had 20 years of experience with the State of Louisiana, 12 years of experience with LRS, and 4 years of supervisory experience. See Record Document 67, § 9.

Jenkins alleges that "never in the history of the Shreveport LRS office has someone with less time working for the state, less time working for the agency, less supervisory experience, and less time holding the educational level required by the agency been promoted over someone who has more of each of these requirements." Id. at § 10. Taking Jenkins allegations as true, it appears that Vaughn being promoted instead of her did not comply with the usual practice of the LRS Shreveport office. The allegations contained in the complaint do not establish however that she was "deterred by a known and consistently enforced policy of discrimination." Jenkins offers no evidence of any other instances of an individual being discriminated against that would establish a policy that deterred her from applying from the position. This appears to be an isolated incident in which Jenkins was not promoted, and even if she believed that Dyess would not promote her based on statements he made, that does not rise to the level necessary to establish a known and consistently enforced policy of discrimination. By failing to plead facts sufficient to raise a claim for failure to promote, based on Jenkins' failure to apply for the position and failure to satisfy the requirements for a futile gesture, the claim for failure to promote must be

dismissed.

### B. Failure to State a Claim for Retaliation

LWC argues that Jenkins has failed to state a claim for retaliation in that she has failed to satisfy the three elements of a claim for retaliation: (1) she failed to allege that she engaged in an activity protected by Title VII (2), she failed to allege an adverse employment action occurred, and (3) she failed to allege a causal link between a protected activity and any adverse employment action. Jenkins alleges that her supervisor, Dyess, instructed two subordinate white females who reported to Jenkins that they were to start reporting directly to him. Jenkins then filed a grievance about this practice, and Dyess allegedly retaliated by telling other employees that the intended to ensure that Jenkins would not be promoted, and ultimately Vaughn was given the promotion. See Record Document 67, § 7.

Taking the facts of the complaint as true, Jenkins filed a grievance following Dyess telling two white female employees that they were to report to him instead of Jenkins. Jenkins argues that the filing of the grievance about Dyess' actions is the protected activity. In order for this to be a protected activity, the action must show that Jenkins "opposed any practice made an unlawful employment practice by this subchapter." See 42 U.S.C. §2000e-3. In order to be an unlawful employment practice under the subchapter, there must be discrimination based upon an individual's race, religion, sex or national origin. See id. The complaint merely states that Dyess told the two subordinate white female employees to report directly to him instead of to Jenkins. Although the race of the two subordinate employees is identified, that is not sufficient to state a claim for the required protected activity.

Even if the alleged activity was protected, Jenkins would still have to allege an

adverse employment action occurred and that there is a causal link between that adverse employment action and the protected activity. LRS argues that Dyess was Jenkins supervisor and therefore he was entitled to make changes with regards to who was under Jenkins' supervision. Jenkins alleges that after she filed her grievance, Dyess retaliated by "telling other employees in the office that he intended to ensure Jenkins would not be promoted by talking to Kenneth York." See Record Document 67. The question then is whether a link can be shown between Dyess' alleged statement that he would prevent Jenkins from being promoted and the alleged protected activity. Jenkins has failed to allege facts sufficient to show that there is a causal link between her failure to be promoted and the alleged statements by Dyess. Accordingly, the claim for retaliation must be dismissed.

### C. Failure to State a Claim to Relief Under Louisiana State Tort Law

LWC additionally argues that Jenkins has failed to state a claim to relief under Louisiana state tort law. It specifically argues that Jenkins cannot bring a negligence claim under Louisiana Civil Code Article 2315 in conjunction with Title VII claims and that Jenkins has failed to state a claim for Intentional Infliction of Emotional Distress ("IIED").

Jenkins alleges in her Second Amended Complaint that LRS' actions "constitute a breach of duty imposed on LRS, which duty was designed to prevent the injury suffered by Ms. Jenkins in this case, and are thus torts within the meaning of La. Civil Code art. 2315." Record Document 67. LWC and Jenkins have cited conflicting case law as to whether Article 2315 includes allegations of employment discrimination. The Fifth Circuit addressed this issue in McCoy v. City of Shreveport, where the Court reasoned that "[t]o the extent that McCoy argues that her tort claim was not limited to IIED, La. Civil Code Article 2315

does not protect against employment discrimination." McCoy v. City of Shreveport, 2007 WL 3101010 (5th Cir. 2007). As in McCoy, Jenkins has alleged employment discrimination on the part of LRS, with the facts alleged specific to her employment discrimination claim. La. Civil Code art. 2315 is not the proper statute under which to assert an employment discrimination claim. Therefore, any such claims must be dismissed, with the exception of the IIED claim.

An intentional tort claim such as IIED may be brought in conjunction with a discrimination claim under Louisiana law, however all of the elements of IIED must be satisfied. The elements consist of: (1) Defendant's conduct was so extreme in degree and character that it went beyond all bounds of decency and was utterly intolerable in a civilized community; (2) that such conduct caused severe emotional distress; and (3) that Defendant intended, by performing the acts complained of, to inflict severe emotional distress upon Plaintiff or that Defendant knew that such severe distress would be certain or substantially certain to result from the conduct. See White v. Monsanto Company, 585 So. 2d 1205, 1209 (La. 1991).

In order to overcome the Motion to Dismiss, Jenkins must have plead factual allegations as to the IIED that when assumed to be true raise a right to relief above the speculative level. Jenkins' Second Amended Complaint makes no reference to any severe emotional distress that she allegedly suffered. In taking the Compliant as a whole, there are no facts plead that, taken as true, meet the pleading requirements under the Iqbal standard. Merely stating that LRS is liable to Jenkins for "emotional distress, mental anguish, humiliation, reputation injury" is not sufficient for an IIED claim to survive a Rule 12(b)(6) challenge.

## CONCLUSION

Based on the foregoing analysis, LWC's Motions to Dismiss (Record Document 67) is **GRANTED** and all of Jenkins' claims are **DISMISSED**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 19th day of August, 2016.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE